IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-00258-FL

**Shaquez Ray**,

               Plaintiff,

v.

**Jacqueline Mitchell,** et al.,

               Defendants.

**Order &
Memorandum & Recommendation**

Plaintiff Shaquez Ray, proceeding pro se, seeks to sue the North Carolina Department of Motor Vehicles (DMV) and two employees: Director Jacqueline S. Mitchell and Operations Manager Erika Amerson. He also asks to proceed without paying the standard filing fee for civil actions. And Ray seeks a preliminary injunction related to his ability to drive during the pendency of this action.

The court will waive the filing fee because Ray lacks the resources to pay it. But the Complaint fails to state a viable claim. So the undersigned will recommend that the court dismiss his Complaint for failing to state a claim for relief. And because he is unlikely to succeed on the merits, the court should deny Ray's motion for a preliminary injunction.

**I.    Background**

Ray's Complaint contends that the Defendants intended to suspend his license on May 18, 2025.[1] Compl., D.E. 1. And he maintains they intend to do so without providing him the process required by the Fourteenth Amendment. *Id.* The Complaint states that he has not been convicted

---

[1] Earlier this month, Ray filed a Supplemental Notice stating that his license suspension took effect in May as stated. Suppl. Notice ¶ 1, D.E. 8.

of an offense nor "subjected to a judicial order authorizing" the license suspension. *Id.* Ray claims he had requested a pre-deprivation hearing from DMV but had not received a response. *Id.* He seeks injunctive relief as well as damages of $550,000. *Id.*

Along with filing his Complaint, Ray requested that the court issue a preliminary injunction prohibiting the Defendants from suspending his commercial driving privileges. Mot. Prelim. Inj., D.E. 5. He renewed this request once the DMV suspended his driving privileges. Supp. Notice, D.E. 8. The court then required Ray to file a copy of any notice he received from DMV providing the basis for the suspension of his driving privileges. June 6, 2025 Text Order.

In response Ray submitted three notices he received from the DMV. Ex. A at 2–5, D.E. 10–2.[2] Each notice relates to a separate state court case stemming from a separate traffic citation, and they inform Ray that his driving privileges are "scheduled for an indefinite suspension in accordance with General Statute 20–24.1 for failure to appear . . . ." The notices list the date the suspension will begin and explain both how to avoid suspension of his driving privileges and how to have his driving privilege reinstated once it is suspended.

The State of North Carolina maintains the dockets for these cases online.[3] *State* v. *Ray*, No. 24CR017278–190 (N.C. Dist. Ct. 10th Judicial Dist. filed Mar. 30, 2024), *available at*

---

[2] Although not attached to the Complaint, the court may consider the Notices later submitted by Ray since the Complaint explicitly references them and they are integral to its claims. *See Am. Chiropractic Ass'n* v. *Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

[3] The court may take judicial notice of the public records from Ray's state court cases. *See Philips* v. *Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that courts "may properly take judicial notice of matters of public record"); *Colonial Penn Ins. Co.* v. *Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'"); *see also Kilgo* v. *Scalzo*, No. 6:22-CV-0815, 2022 WL 1129801, at *1 and n.1 (D.S.C. Mar. 28, 2022) (taking judicial notice of plaintiff's previous case in the court when screening under § 1915 and noting that the court may take judicial notice of public records from his state court cases as well), *adopted by* 2022 WL 1128599 (D.S.C. Apr. 15, 2022), *aff'd,* No. 22-6589, 2022 WL 17750713 (4th Cir. Dec. 19, 2022).

https://perma.cc/TP4N-RJBC*State* v. *Ray*, No. 24-CR018850–910 (N.C. Dist. Ct. 10th Judicial Dist. filed Apr. 8, 2024), *available at* https://perma.cc/8DTQ-BHFX; *State* v. *Ray*, No. 24CR020755–910 (N.C. Dist. Ct. 10th Judicial Dist. filed Apr. 18, 2024), *available at* https://perma.cc/J492–8D4B.

A review of the dockets[4] shows that Ray received three citations in March and April 2024 for speeding and, on one occasion, reckless driving.[5] Each citation informed him of, among other things, the date and time when he needed to appear in court. His court dates were set for May and July 2024.

The dockets also show that Ray filed an affidavit[6] in response to each citation. In each affidavit Ray declared, among other things, that he had a "right to travel unmolested," "wish[ed] to remain private," and claimed that "[a]ny attempt to force [him] to participate in such atrocities" violated his rights. *Id.* at 1. Accompanying each affidavit was a copy of the citation, on which he scrawled, "Refused for cause timely without dishonor and without recourse to me. I do not accept this offer to contract and I do not consent to these proceedings."

Each docket also shows that the court called each case on the date stated on the notice. But Ray failed to appear at any of these proceedings. Then, in May 2025, over a year after Ray failed to appear, DMV sent him the notices that precipitated this lawsuit.

---

[4] The dockets will be filed on the docket concurrently with this opinion.
[5] The citations will be filed on the docket concurrently with this opinion.
[6] The affidavits will be filed concurrently with this opinion.

3

## II. IFP Motion

Ray asks the court to allow him to proceed with this action without paying the required filing fee and other costs associated with litigation (colloquially known as proceeding *in forma pauperis* or IFP). The court may grant his request if he submits an affidavit describing his assets and the court finds that he cannot pay the filing fee. 28 U.S.C. § 1915. In assessing a request to proceed IFP, the court should consider whether the plaintiff can pay the costs associated with litigation "and still be able to provide himself and his dependents with the necessities of life." *Adkins* v. *E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (internal quotation marks omitted).

The court has reviewed Ray's application and finds that he lacks the resources to pay the costs associated with this litigation. The court thus grants his motion (D.E. 3) and allows him to proceed IFP.

## III. Screening under 28 U.S.C. § 1915

After determining that Ray is entitled to IFP status, the court must analyze the viability of his claims. 28 U.S.C. § 1915(e). The court reviews a complaint to eliminate claims that unnecessarily impede judicial efficiency and the administration of justice. The court must dismiss any portion of the complaint it determines is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* § 1915(e)(2)(B).

The court may dismiss a complaint as frivolous because of either legal or factual shortcomings. *Neitzke* v. *Williams*, 490 U.S. 319, 325 (1989). "Legally frivolous claims are based

4

on an 'indisputably meritless legal theory' and include 'claims of infringement of a legal interest which clearly does not exist.'" *Adams* v. *Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327). A complaint is factually frivolous when its factual allegations are "fanciful, fantastic, and delusional." *Denton* v. *Hernandez*, 504 U.S. 25, 32–33 (1992).

A complaint fails to state a claim upon which relief may be granted if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Ray's pro se status relaxes, but does not eliminate, the requirement that his complaint contain facially plausible claims. The court must liberally construe a pro se plaintiff's allegations, but it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. *Johnson* v. *BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011).

Ray alleges that the Defendants violated his Fourteenth Amendment due process rights when it failed to provide him with a pre-deprivation hearing before revoking his license. The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process." U.S. Const. amend. XIV, § 1.

When a state wishes to curtail one of the rights protected by the Amendment, "it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before" doing so. *Bell* v. *Burson*, 402 U.S. 535, 542 (1971). But a pre-deprivation is not required in all cases,

5

sometimes a post deprivation hearing will suffice. *See Mathews* v. *Eldridge*, 424 U.S. 319, 333–34 (1976).

DMV suspended Ray's license under North Carolina General Statutes § 20–24.1. That statute requires that the Division revoke a person's driver's license if, among other things, it receives notice from a court that the person has failed to appear at a trial or hearing. N.C. Gen. Stat. § 20–24.1(a)(1).

Once a license has been revoked under § 20–24.1 for failure to appear, it remains so until one of two conditions is satisfied. A person can have their license restored if they "dispose[] of the charge in the trial division in which he failed to appear[.]" *Id.* § 20–24.1(b)(1). The person can also have their license restored if they "demonstrate[] to the court that he is not the person charged with the offense[.]" *Id.* § 20–24.1(b)(2). To facilitate license restoration, the law entitles a defendant to a hearing or trial "within a reasonable time" of the defendant's appearance in court or upon a motion by the defendant. *Id.* § 20–24.1(b1). This case requires the court to determine whether this process complies with the Fourteenth Amendment.

A court considers three factors to determine the nature and timing of the hearing required by the Due Process of Law Clause. First, it looks at the private interest that will be affected by the official action. *Id.* at 335. Second, it examines the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. *Id.* And third, it evaluates the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.*

6

Case 5:25-cv-00258-FL-RN   Document 11   Filed 07/07/25   Page 6 of 11

As to the first *Mathews* factor, a driver has a substantial interest in the continued possession and use of his license. *Mackey* v. *Montrym*, 443 U.S. 1, 11 (1979). Thus, the State may not revoke a driver's license "without the procedural due process required by the Fourteenth Amendment." *Dixon* v. *Love*, 431 U.S. 105, 112 (1977) (quoting *Burson*, 402 U.S. at 539).

Yet this private interest is not so great to compel "departure from the principle that an evidentiary hearing is not ordinarily required prior to adverse administrative action." *Tomai-Minogue* v. *State Farm Mut. Auto. Ins. Co.*, 770 F.2d 1228, 1235 (4th Cir. 1985) (citing *Dixon*, 431 U.S. at 113)). Instead, courts must consider the duration of a potentially wrongful deprivation as it relates to the "timeliness of the post-suspension review available to a suspended driver[.]" *Johnson* v. *Jessup,* 381 F. Supp. 3d 619, 639 (M.D.N.C. 2019) (quoting *Mackey*, 443 U.S. at 12)).

North Carolina law provides those whose licenses are suspended for a failure to appear in court the right to a trial or hearing "within a reasonable time" of either appearing in court or requesting one. N.C. Gen. Stat. § 20–24.1(b)(1). This provision gives a person whose license was revoked for failure to appear the tools to have their license restored in a timely manner, either by disposing of their charges or showing that they were not the person charged with the offense. The fact that Ray can have a hearing or trial to remedy the suspension of his license "within a reasonable time" of moving for one "lessens 'the impact of official action'" on his interests in retaining his driving privileges. *Johnson*, 381 F. Supp. 3d at 640 (quoting *Mackey*, 443 U.S. at 12)). When considering the procedure provided by North Carolina's law, Ray's "private interest . . . is insufficient to mandate a pre-revocation evidentiary hearing." *Johnson*, 381 F. Supp. 3d at 340 (quoting *Tomai-Minogue*, 770 F.2d at 1235)). So the first *Mathews* element does not require the pre-deprivation hearing Ray seeks.

7

On the second *Mathews* factor, the court begins by assessing "the risk of an erroneous deprivation" of the protected interest "through the procedures used[.]" *Matthews*, 424 U.S. at 335. Since Ray's loss of his license is based on an objective fact—here, a failure to appear—there is little risk of an erroneous deprivation. *See Mendoza* v. *Garrett*, 358 F. Supp. 3d 1145, 1179 (D. Or. 2018) (citing *Mackey,* 443 U.S. at 13)).[7]

The second part of this *Mathews* factor looks to the value of any additional safeguards in preventing an erroneous deprivation. *Mathews*, 424 U.S. at 335. A number of considerations lead to the conclusion that there is little value to requiring the pre-deprivation hearing Ray seeks. To begin with a judicial officer already determined that Ray did not appear in court, so this limits the utility of any additional judicial proceedings in preventing an erroneous license suspension. *See Franceschi* v. *Yee*, 887 F.3d 927, 937 (9th Cir. 2018) (noting risk of erroneous deprivation was low where the prior proceedings established facts supporting plaintiff's suspension)). But in any event, Ray received notice and an opportunity to cure the issue that led to his license's suspension. State law provided him with the right to have the matter addressed "within a reasonable time" of requesting to appear before the court. N.C. Gen. Stat. § 20–24.1(b1). This procedure "substantially alleviates, and may very well eliminate, the risk of erroneous deprivations[.]" *Johnson,* 381 F. Supp. 3d at 643. So the second *Mathews* factor weighs against Ray's claim.[8]

---

[7] And Ray does not allege that the revocation was erroneous. He does not assert that he appeared at the hearings, the times and places for which the citations set out. Nor does he claim he paid the fines assessed. What arguments he seeks to advance at a hearing to challenge the revocation are not articulated. *See Conn. Dep't of Pub. Safety* v. *Doe*, 538 U.S. 1, 8 (2003) ("Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme.").

[8] While Ray claims that he asked DMV for a pre-deprivation hearing, Compl. ¶ 11, there is no indication he filed a motion or otherwise appeared before the state court to take advantage of his rights under North Carolina General Statutes § 20-24.1(b1).

The final *Mathews* factor evaluates the Government interest at issue. For driver's license revocation, there is "substantial public interest in administrative efficiency" which "the availability of a pretermination hearing in every case[]" would impede. *Dixon*, 431 U.S. at 114; *see also Mackey*, 443 U.S. at 18 (increasing the number of pre-revocation hearings would "impose a substantial fiscal and administrative burden on the Commonwealth"). Although not accorded controlling weight under the *Mathews* analysis, the court must consider and weigh the governmental interest in conserving limited "fiscal and administrative resources[.]" *Mathews*, 424 U.S. at 348. This factor does not support Ray's claim that he is entitled to a pre-deprivation hearing.

In sum, the *Mathews* factors reveal a significant public interest at issue, a minimal risk of an erroneous deprivation and minimal value in additional proceedings, and strong governmental interest in efficient administration. *Johnson,* 381 F. Supp. 3d at 644 (citations and quotations omitted). So the Due Process of Law Clause did not require the State to afford Ray a pre-deprivation hearing before revoking his license under § 20–24.1 for failure to appear.

Ray has thus failed to state a viable claim on which he may obtain the relief requested. The District Court should dismiss the Complaint.

IV. **Motion for Preliminary Injunction**

Ray also asks the court to issue a preliminary injunction that would restore his license. A party seeking a preliminary injunction must show four things. First, that he is likely to succeed on the merits. *Winter* v. *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Second, that he is likely to suffer irreparable harm in the absence of preliminary relief. *Id.* Third, that the balance of equities tips in his favor. *Id.* And fourth, that an injunction is in the public interest. *Id.* Injunctive relief,

9

Case 5:25-cv-00258-FL-RN     Document 11     Filed 07/07/25     Page 9 of 11

such as the issuance of a preliminary injunction, is an extraordinary remedy that may be awarded only upon a clear showing that the plaintiff is entitled to this relief. *Mazurek* v. *Armstrong*, 520 U.S. 968, 972 (1997).

A plaintiff must satisfy all four factors. *Pashby* v. *Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (finding that "each preliminary injunction factor [must] be satisfied as articulated.") (internal quotation marks omitted); *Mountain Valley Pipeline, LLC* v. *W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 365–66 (4th Cir. 2019).

Because the Complaint fails to state a claim, there is no likelihood of success on the merits. So Ray has not satisfied the elements for a preliminary injunction. The court should thus deny Ray's request for injunctive relief.

## V. Conclusion

The court grants Ray's motion to proceed IFP. D.E. 3. And for the reasons discussed above, the undersigned recommends that the court dismiss the complaint (D.E. 1) without prejudice for failure to state a claim. And the undersigned recommends that it deny Ray's motion for a preliminary injunction (D.E. 5).

The Clerk of Court must serve a copy of this Memorandum and Recommendation ("M&R") on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make their own determination about the

10

Case 5:25-cv-00258-FL-RN    Document 11    Filed 07/07/25    Page 10 of 11

matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated: July 7, 2025

_____
Robert T. Numbers, II
United States Magistrate Judge